IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

O'GRAY IMPORT & EXPORT,              *

     Plaintiff,                              *

       v.                                  *          Civil Action No. RDB-06-1020

BRITISH AIRWAYS PLC,                     *

     Defendant.                             *

*      *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM OPINION

This action arises out of a four-count Complaint filed by Plaintiff O'gray Import & Export ("O'gray" or "Plaintiff") against British Airways, PLC ("British Airways" or "Defendant") for damages due to British Airways's delivery of spoiled cargo.  This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 as the Complaint brings claims under federal law.  Pending before this Court is Defendant's Motion for Summary Judgment on the grounds that O'gray failed to comply with the notice requirement under Article 26 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention").[1]  The parties' submissions have been reviewed and a hearing was held on May 2, 2007.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND & PROCEDURAL HISTORY

The facts are viewed in a light most favorable to the Plaintiff as the nonmoving party.

---

[1] 49 Stat. 2000, T.S. no. 876, Oct. 12, 1929, *reprinted in* note following 49 U.S.C. § 40105 [hereinafter "Warsaw Convention"].  The Warsaw Convention was amended by the Hague Protocol in 1955 and the Montreal Protocol No. 4 in 1975.

On August 22, 2005, Plaintiff O'gray Import & Export ("O'gray") hired British Airways PLC ("British Airways"), operating under its trade name British Airways World Cargo, to transport smoked fish from Accra, Ghana, to Baltimore-Washington International Airport in Baltimore, Maryland, via London.  The air waybill specified that O'gray's cargo was to be shipped with "special handling" due to the perishable nature of the fish.

The cargo reached BWI on August 29, 2005, "more than five days after the expected date of arrival."  (Am. Compl. ¶ 4.)  Upon arrival, the cargo passed through United States Customs. However, British Airways workers delivered the cargo to the wrong shipper, which delayed inspection by the Food & Drug Administration ("FDA").  On September 8, 2005, the misplaced cargo was returned to British Airways and the FDA was finally able to inspect the fish.  The FDA released the cargo to O'gray that same day but placed a hold on it because there was evidence of mold.  Despite being on clear notice of potential problems with the cargo, there is no evidence that O'gray noted any written complaint with British Airways or took any steps to determine the extent of damage to its cargo.  Two weeks passed, and on September 22, 2005, the FDA took samples of the smoked fish and found that it was not edible for sale to the public. Thus, the FDA denied entry of the shipment.  Despite this government action with respect to the cargo, O'gray still took no action and did not note any complaint to British Airways.  Ultimately, on October 5, 2005, an order for destruction was issued, and the cargo was destroyed on October 18, 2005.

The first written complaint was made by O'gray on October 19, 2005, when it mailed a notice of complaint dated October 10, 2005 to British Airways seeking damages for the value of the destroyed fish and shipping costs.  British Airways denied the claim, alleging that O'gray did

not comply with the notice requirements of the air waybill[2] because the letter was sent more than twenty-one days after the shipment was "received . . . on September 9th."[3]  (Def.'s Mem. Supp. Summ. J. Ex. 3.)

O'gray filed the instant lawsuit on April 24, 2006 against British Airways World Cargo ("BA World Cargo") alleging that BA World Cargo breached its duty of care and responsibilities and was negligent in delivering the goods to the wrong shipper.  BA World Cargo moved to dismiss the Complaint on July 5, 2006 on the grounds that it was not a legal entity and for insufficient service of process.  A hearing was held on March 9, 2007, and this Court denied the Motion to Dismiss but ordered the Plaintiff to file an Amended Complaint to reflect the proper Defendant, British Airways PLC.  Defendant filed the subject Motion for Summary Judgment on March 30, 2007 (Paper No. 18).  A hearing was held on May 2, 2007.

STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of

---

[2] Pursuant to the terms of the air waybill, the "person entitled to delivery must make a complaint to the carrier in writing" within 14 days "from receipt of the goods" if the goods were damaged or within 21 days of "the date the goods are placed at his disposal" if the delivery was delayed.  (Dominguez Decl. Ex. A.)

[3] Defendant now contends that the shipment was received on September 8, 2005, not September 9, 2005.  (*See* Def.'s Reply Mem. J. 6.)  For purposes of this Memorandum Opinion this variance of dates is of no legal effect.

the matter but to determine whether there is a genuine issue for trial."  A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

 In undertaking this inquiry, a court must view the facts and the reasonable inferences

drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v.*

*Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424

F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a

reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the

movant has established the absence of any genuine issue of material fact, the opposing party has

an obligation to present some type of evidence to the court demonstrating the existence of an

issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005)

(citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule

56(e) also requires that "affidavits submitted by the party defending against a summary-

judgment motion contain specific facts, admissible in evidence, from an affiant competent to

testify, 'showing that there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles Alan Wright

& Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere

existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to

preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

 This Court has previously held that a "party cannot create a genuine dispute of material

fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d

373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to

prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d

774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th

Cir. 1987)).

<u>ANALYSIS</u>

Defendant British Airways PLC ("British Airways") has moved for summary judgment

on the grounds that Plaintiff O'gray Import & Export ("O'gray") failed to comply with the notice

requirements of the Warsaw Convention, as adopted by the parties' contract, when it sought

damages for spoiled cargo.  The Warsaw Convention was created in 1929 to promote uniformity

in the handling of claims arising out of international air transportation.  It was amended in 1955

by the Hague Protocol and again in 1975 by the Montreal Protocol No. 4.[4]  The treaty applies to

the "international carriage" of people and goods.  Warsaw Convention at art. 1(1).  With respect

to cargo, the Warsaw Convention holds airlines liable for "damage sustained in the event of the

destruction or loss of, or damage to, cargo upon condition only that the occurrence which caused

the damage so sustained took place during the carriage by air." *Id.* at art. 18(2).  "Carriage by

air" includes the period during which the cargo is in the "charge of the carrier, whether in an

airport or on board an aircraft. . . ." *Id.* at art. 18(4).  The treaty contains specific procedural

---

[4] The Warsaw Convention has been superseded by the Convention for the Unification of
Certain Rules for International Carriage by Air, which was signed in Montreal on May 28, 1999
("Montreal Convention").  *See* S. Treaty Doc. No. 106-45.  However, the Warsaw Convention
remains in full effect with respect to its member countries that are not yet a party to the Montreal
Convention.  In this case, Ghana is not a party to the Montreal Convention.  Thus, the Montreal
Convention could not apply to this case.  However, because both Ghana and the United States
are parties to the Warsaw Convention, that treaty could apply.  *See* discussion *infra* p. 6.

requirements that must be followed in order to bring a claim for damages.  Of particular
relevance to this case is the notice requirement in Article 26.  A party claiming that its cargo was
damaged must document the complaint on the air waybill or send written notice to the carrier
within fourteen days of the receipt of the cargo.  *Id.* at art. 26(2).  A party claiming that its cargo
was delayed must provide written notice within twenty-one days of the date on which the cargo
was "placed at his disposal."  *Id.*  There is no notice requirement with respect to destroyed cargo.
The Article further states that a failure to comply with the notice requirements absolves the
carrier from liability in the absence of fraud.  *Id.* at art. 26(4).

     In this case, Defendant argues that the Warsaw Convention governs its 2005 delivery of
Plaintiff's smoked fish.  (Def.'s Mem. Supp. Summ. J. 3.)  Both the originating and destination
countries, Ghana and the United States, respectively, were parties to the Warsaw Convention, as
amended by the Hague and Montreal Protocols, in the fall of 2005 when the events leading to
this lawsuit took place.[5]  The first issue for this Court, therefore, is whether the shipment in
question falls within the scope of the treaty.  Although it is not clear exactly when the mold
developed on the smoked fish rendering them inedible, the cargo remained within the "charge"
of British Airways until it was released to O'gray.  Thus, any damage to the cargo occurred
during its "carriage by air" as the term is defined by the treaty.  *See* Warsaw Convention at art.
18(4).  Accordingly, the transportation in question falls within the scope of the Warsaw
Convention.[6]

_____

     [5] (Def.'s Mem. Supp. Summ. J. Ex. 4.)  As of 2005, Ghana had not ratified the Montreal
Convention, so the newer treaty cannot apply to the international shipment in question.

     [6] Even if the Warsaw Convention did not apply, the express terms of the contract between
the parties provides virtually identical notice requirements.  Thus, the same analysis would apply

The next inquiry is what notice requirement Plaintiff was required to follow.  In order to do this, this Court must first determine whether the cargo was lost, damaged, or destroyed, as the notice requirements vary depending on the nature of the liability.  O'gray argues that its cargo was destroyed, relying on the fact that the fish was inedible, rendered worthless, and ultimately destroyed.  (Pl.'s Mem. Opp'n Summ. J. 5.)  British Airways argues that the cargo was damaged rather than destroyed.  (Def.'s Reply Mem. 1.)  This distinction is significant, because the Warsaw Convention's notice requirements do not apply to destroyed goods.  *See* Warsaw Convention at art. 26(2).  In *Dalton v. Delta Airlines, Inc.*, 570 F.2d 1244, 1246-47 (5th Cir. 1978), the court held that notice was not required under the Warsaw Convention when a shipment of greyhounds arrived dead because the animals were clearly destroyed.  The court reasoned that the carrier was already aware that the dead dogs were "not at all the thing shipped" and drew an analogy to a container of brandy that clearly has no value if broken during delivery. *Id.* at 1247.  Since *Dalton*, courts have held that in order for cargo to be considered destroyed, the destruction has to be "total and obvious."  *See Highlands Ins. Co. v. Trinidad & Tobago (BWIA Int'l) Airways Corp.*, 739 F.2d 536, 539 (11th Cir. 1984) ("If Dalton applies at all beyond animal cases, it controls only situations where the destruction is both total and obvious."); *Hughes-Gibb & Co. v. Flying Tiger Line, Inc.*, 504 F. Supp. 1239, 1243 (D. Ill. 1981) (holding that where "loss was obvious and apparent to the defendant, to require that written notice also be provided of it before any recovery could be had would seem to serve no useful or justifiable purpose").

In this case, it is unclear exactly when the mold developed on O'gray's smoked fish.

---

if the Plaintiff's claims were analyzed under a simple breach of contract theory.

Plaintiff argues that the entire shipment was inedible and thus destroyed on September 8, 2005. Yet it offers no evidence to support this contention.  It is well-established that mere conjecture or speculation is insufficient to create a genuine issue of material fact on a motion for summary judgment.  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  In fact, the evidence on the record indicates that the extent of damage to the cargo was unknown when it arrived.  Specifically, the FDA placed a hold on the cargo on September 8th because there was suspicion that it contained mold and the agency needed to do further testing to determine the extent of the damage.  Thus, contrary to the Plaintiff's position, it was *not* "obvious" that the fish was worthless on that date or else the FDA would have denied its entry.  Accordingly, the Warsaw Convention and the air waybill imposed a duty on the Plaintiff to provide notice within fourteen days of the date it received the goods.

The final inquiry, therefore, is whether O'gray complied with the Warsaw Convention's fourteen-day notice requirement for damaged cargo.  It is undisputed that the Plaintiff mailed a complaint letter to the Defendant on October 19, 2005, even though it was dated October 10, 2005.  (*See* Pl.'s Mem. Opp'n Summ. J. 2; Dominquez Dec. Ex. B.)  The only dispute between the parties is what date O'gray "received" the cargo.  British Airways contends that the cargo was received on September 8, 2005, because that was the date that O'gray "signed for and received the goods." (Def.'s Reply Mem. 6.)[7]  O'gray counters that it did not have control of the cargo until October 5, 2005, when the FDA released its hold and issued an order of destruction.

---

[7] The Defendant originally argues that Plaintiff had twenty-one days from September 8, 2005 when it believed the Plaintiff's argument was that the goods were delayed.  (Def.'s Mem. Supp. Summ. J. 6.)  However, the Defendant modified its argument when the Plaintiff focused on the damage and/or destruction of the fish rather than their delay.

(Pl.'s Mem. Opp'n Summ. J. 2.)  This Court finds that the notice requirement was triggered on September 8, 2005, because that was the day an individual named Grace Owusu of O'gray signed the air waybill indicating receipt of the cargo.  (*See* Def.'s Mem. Supp. Summ. J. Ex. 1.) It is also relevant that she could have noted her complaint on the document at that time, as provided in the Warsaw Convention.  *See* Warsaw Convention at art. 26(3) ("Every complaint must be made in writing upon the document of transportation or by separate notice. . . .").  Because she did not make a notation on the air waybill, however, O'gray had fourteen days from September 8, 2005 to send written notice of its complaint to British Airways.  As notice was not sent until October 19, 2005, more than a month later, O'gray's complaint was not timely made.[8]

Because Plaintiff failed to comply with the notice requirements of the Warsaw Convention, which governs the transportation at issue, its claim against the Defendant is barred. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.


CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  A separate Order and Judgment follows.


Date:  May 4, 2007                          /s/_____
                                            Richard D. Bennett
                                            United States District Judge

---

[8] Alternatively, this Court notes that even if the notice period commenced on September 22, 2005, upon return of the cargo, O'gray still failed to make timely notice.